UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOE LEWIS SHEHAN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:15-cv-1315 (MPS) |
| | : | |
| WARDEN ERFE, et al., | : | |
| Defendants. | : | |

**RULING ON DEFENDANT CHAMPION'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Joe Lewis Shehan, commenced this civil rights action against correctional officers at the Corrigan-Radgowski Correctional Center ("Corrigan"). He asserted claims for excessive force, deliberate indifference, denial of due process, negligence, assault, and battery arising from his confinement in restraints following an incident at Corrigan in November 2014. The only remaining claims are the excessive force and assault and battery claims against defendants Norfleet, Ruggeiro, Champion, and Conger regarding application of in-cell restraints. On January 4, 2017, the Court permitted defendants Champion and Conger to file a second motion for summary judgment addressing their personal involvement in the incident. Defendant Champion has done so. For the reasons that follow, defendants Champion's motion is denied.

I.   Standard of Review

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per

curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He must present such evidence as would allow a jury to find in his favor to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). The nonmoving party "must offer some hard evidence showing that its version is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

II.   Facts[1]

On November 12, 2014, the plaintiff was observed fighting with his cellmate. Defendant Champion arrived at the cell with other officers. After several attempts at verbal intervention, defendant Champion deployed a chemical agent several times to get the inmates to exit the cell. The plaintiff received disciplinary reports for assault, impeding an order, and hostage-taking. He also was arrested by the Connecticut State Police on charges of assault, unlawful restraint, reckless endangerment, and failure to submit to fingerprints.

After he was removed from the cell, the plaintiff was escorted to the medical unit where he was decontaminated from the chemical agent. He also was given medical and mental health examinations for medical approval before being placed in restrictive housing. The plaintiff refused to answer any questions. As a result, he was not approved for placement in restrictive housing. The plaintiff was confined in cell 113 in the medical unit to reduce the likelihood of self-harm.

In the medical unit, the plaintiff was required to participate in the routine strip search protocol pursuant to Administrative Directive 6.7. This directive requires an inmate to undergo a strip search

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and attached exhibits from this and the prior motion for summary judgment. Because the plaintiff is *pro se*, the Court also considers statements made by the plaintiff that are within his personal knowledge and not contradicted by admissions in the plaintiff's deposition testimony.

before the inmate is placed in restrictive housing or if the inmate has been involved in a significant incident. *See* Defs' Ex. E, Doc. 59-7, Directive 6.7, Section 7(A)(6) and (7). The plaintiff had participated in a significant incident and was slated for confinement in restrictive housing, so the strip search was required.

The plaintiff refused to bend at the waist and spread his buttocks. Instead, he wanted to squat and cough. Directive 6.7, Section 3(Q) requires a visible inspection of the rectum. The parties dispute whether the rectum can be visibly inspected when the inmate squats and coughs. When an inmate refuses to comply with a strip search, as defined in Directive 6.6, Section 3(Q), correctional staff may either conduct a hands-on controlled strip search under Directive 6.7, Section 7(D), or use in-cell restraints under Directive 6.5, Section 8(A)(4). In-cell restraints may be used to "ensure compliance with an order" and "to maintain order, safety and security." Directive 6.5, Section 8(A)(4). Shift supervisors may use in-cell restraints for any reason set forth in Section 8(A). Directive 6.5, Section 8(B)(1).

In-cell restraints may include one or more of the following: handcuffs, leg irons, flex cuffs, a black box, a waist chain, and a tether chain. The inmate is handcuffed with his hands in front. His ankles are secured by leg irons. A tether chain connects the two with sufficient slack to enable the inmate to stand erect. The black box fits over the handcuffs and covers the keyholes to prevent the inmate from picking the locks. It forms a rigid link between the inmate's wrists. In-cell restraints cannot be used as a punitive measure. Once the restraints are applied, the inmate must be checked every fifteen minutes with observations recorded. The shift commander must observe the inmate at least twice per shift and medical staff must observe the inmate and conduct a mental health assessment at least twice per day. Inmates are able to feed themselves and use the toilet while restrained.

At the time of the incident, Warden Efre had an order in effect prohibiting officers from conducting controlled strip searches except in exigent circumstances, such as where officers know that an inmate has a weapon or dangerous contraband on or in his person. The warden instituted the order because a hands-on controlled strip search frequently results in an explosive situation and exposes staff to injury. As no exigent circumstances were present, defendant Champion ordered the plaintiff placed on in-cell restraints with a black box.

Under defendant Champion's supervision, the officers placed the plaintiff in a safety gown and in-cell restraints in medical unit cell 113. After the officers applied the restraints, defendant Champion asked Nurse Martin to check the restraints pursuant to the restraint protocol. When Nurse Martin determined that the right wrist restraint was too tight, defendant Champion ordered the restraint adjusted. The plaintiff did not complain about the restraints after this adjustment. An officer was posted at the plaintiff's door for continuous observation. Nurse Martin later observed that the restraints had been properly applied and allowed for appropriate circulation and motion. Defendant Champion alleges that she had no further involvement in the plaintiff's confinement in in-cell restraints. The plaintiff disputes this statement and alleges that defendant Champion approached him after the cameras were turned off and offered to release him from in-cell restraints if he would provide a statement.

The plaintiff admits that he was confined and shackled in in-cell restraints from 7:15 p.m. on November 12, 2014, until 2:25 p.m. on November 14, 2014. He denies that, during this time, his restraints were checked every fifteen minutes or that he was offered several opportunities to be released from restraints if he would agree to undergo the strip search protocol. He admits, however, that he refused all offers, stating, "I am not bending over for anyone." ECF No. 59-2, ¶ 31.

III.  Discussion

The only remaining claim is an as-applied excessive force claim concerning the use of in-cell restraints. The remaining defendants are Norfleet, Ruggeiro, Conger and Champion. In the ruling on the first motion for summary judgment, the Court noted that earlier suggestions by the Court could have led the defendants to believe that the only defendants on this claim were Norfleet and Ruggeiro. Accordingly, the Court afforded defendants Conger and Champion an opportunity to file a second motion for summary judgment if either defendant believed he or she was not personally involved in the remaining claim. ECF No. 65 at 20-21. Defendant Champion has filed a motion for summary judgment.

In support of her motion for summary judgment, defendant Champion has submitted her affidavit in which she states: "[O]nce Inmate Shehan was secured on in-cell restraints, I departed the area and did not have any further involvement with him." ECF No. 69-4, ¶ 9. In opposition, the plaintiff has submitted his own affidavit in which he states that, after the camera was turned off, defendant Champion approached his cell and stated that she would release him from restraints if he would make a statement. ECF No. 70-3, ¶¶ 3-4. In his Local Rule 56(a)2 Statement, the plaintiff states further that defendant Champion offered to release him from restraints if he would give her a statement explaining what had happened. ECF No. 70-2. ¶ 3.

In reply, defendant Champion argues that the plaintiff's statement is not entitled to any credence. She submits a second affidavit denying that any conversation occurred. ECF No. 74-1, ¶ 5. She states that, because the plaintiff was placed in in-cell restraints for refusal to comply with the strip search protocol, the only way he could be released early would be to agree to submit to the strip search; she had no authority to release the plaintiff from restraints if he provided her a statement. *Id.*, ¶ 6.

Administrative Directive 6.5, Section 8(B) provides that placement on in-cell restraints must be approved by the Shift Commander or his designee. Here, defendant Champion ordered the placement. Section 8(B)(7) of the Directive provides: "An inmate may remain on in-cell restraint status until the Shift Commander or designee determines that the use of in-cell restraints is no longer necessary to assure the safety of staff, the inmate and others and that the inmate's behavior no longer presents an increased risk of interference with facility operations."

Defendant Champion does not provide any evidence regarding the reason why in-cell restraint status was terminated. Although she states that the plaintiff could be released early only if he agreed to submit to the strip search protocol, the directive does not appear so limited. In addition, the directive does not specify a maximum duration for in-cell restraint status. Further, even if the directive is interpreted as she suggests, it does not eliminate the factual dispute as to what Defendant Champion actually did. The Court concludes that there is a triable issue regarding defendant Champion's involvement in the alleged use of excessive force.

IV. Conclusion

Defendant Champion's motion for summary judgment [**ECF No. 69**] is **DENIED**.

**SO ORDERED.**

Signed this 5th day of May 2017 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge